AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States District Court
Southern District of Texas
**FILED**
APR 0 1 2015
Clerk of Court

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. M-15-0495-M |
| Daniel Salvador GOMEZ-Reyes YOB: 1972 MX | ) | |
| | ) | |
| _____ | ) | |
| Defendant(s) | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __March 31, 2015__ in the county of __Hidalgo__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC 841 | Knowingly and intentionally attempt to import into the United States from the United Mexican States approximately 75.5 kilograms of methamphetamine, a Schedule II controlled substance, and did knowingly and intentionally possess with the intent to distribute approximately 75.5 kilograms of methamphetamine, a Schedule II controlled substance. Furthermore, the defendant(s) did knowingly and unlawfully conspire to possess with intent to distribute the above listed controlled substance. |
| 21 USC 952 | |
| 21 USC 846 | |

This criminal complaint is based on these facts:
On March 31, 2015, Daniel Salvador GOMEZ-Reyes attempted to make entry into the United States from Mexico through the Pharr, Texas Port of Entry (POE) in a red Kenworth tractor displaying Mexican tags 343-DT-2 with a trailer in tow. GOMEZ was manifested as carrying cactus and squash. GOMEZ was encountered at primary by Customs and Border Protection (CBP) Officer Armando Alaniz, who referred the vehicle to secondary due to an Automatic referral. See Attachment "A" for further details.

✓ Continued on the attached sheet.

_____
Complainant's signature

Martin C. Kehoe HSI Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: 4/1/2015

_____
Judge's signature

City and state: __McAllen, Texas__

Dorina Ramos   U.S. Magistrate Judge
Printed name and title

## Attachment "A"

While in secondary, Agricultural Specialist Jose Franqui conducted an inspection of the trailer and observed abnormailities with the pallets, which was confirmed by a narcotic detection canine. Further inspection of the pallets revealed the presence of approximately one hundred and thirty eight (138) packages wrapped in plastic. The packages, with a total weight of approximately 75.5 kilograms, contained a crystal substance, which field-tested positive for the characteristics associated with methamphetamine.

Gomez provided the following statements to Homeland Security Investigations (HSI) Special Agents Martin Kehoe and Antonio Perez during a post-Miranda interview:

GOMEZ was previously a syndicate truck driver for approximately three (3) years before being hired by an unidentified employer, where he is the sole driver for the only tractor trailer. For each load GOMEZ transports, he receives approximately five thousand ($5,000) pesos, and is able to garner business through outside referrals.

Recently, GOMEZ took a load of meat to Mexico City and received a referral for a load of cactus and squash in Puebla, Mexico. GOMEZ proceeded accordingly and met with a man known only as "Gordo," and his four (4) associates. These men began off-loading the cactus and squash from another trailer in the middle of a street. Gomez found this odd and spoke with the other driver and found that he had only traveled approximately eighty (80) kilometers to this destination. The men then placed approximately twenty four (24) pallets inside GOMEZ's trailer, and hand carried the produce over a period of approximately seven and a half (7 ½) hours. GOMEZ noticed that the pallets were unusual in appearance, and came to learn that they were handmade by "Gordo's" boss. GOMEZ also noticed that the produce boxes seemed far too weathered and came to conclude that the cacti contained a controlled substance, more specifically, marijuana.

GOMEZ, in order to dispel his beliefs, picked up two (2) boxes from two (2) separate rows and dropped them on the ground to see if drugs would come out. GOMEZ was satisfied with his test and telephoned the referring individual to raise his concerns regarding the load. The referring individual assured GOMEZ that this was how "Gordo" operated, and GOMEZ was

again satisfied. GOMEZ claimed that he received no extra payment for the risky transport, but that a failure to transport would lead to a six hundred (600) peso reduction in his pay.